[754 NYS2d 680]

In the Matter of the Claim of SPIROS MANTZAKOS, Appellant, v P.A.O. PARKING CORPORATION et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, December 19, 2002

**APPEARANCES OF COUNSEL**

*Joel M. Gluck*, New York City, for appellant.

*Vecchione, Vecchione & Connors*, Williston Park (*Michael F. Vecchione* of counsel), for P.A.O. Parking Corporation and another, respondents.

## OPINION OF THE COURT

CREW III, J.P.

Claimant sustained a work-related injury to his right eye in April 1995 and was diagnosed with, inter alia, intraocular metallic foreign body, traumatic cataract and retinal detachment. Claimant thereafter underwent surgery during the course of which the piece of metal that had become lodged in his eye was removed and his damaged lens was replaced with an intraocular lens implant. Following this surgery, claimant returned to work and, according to the workers' compensation carrier's consultant, eventually regained 20/20 vision in his right eye. In the interim, the employer filed a C-2 report of injury and an issue thereafter arose regarding claimant's eligibility for a schedule loss of use award for his right eye. Ultimately, the Workers' Compensation Board denied the requested award, and this appeal by claimant ensued.

Workers' Compensation Law § 15 (3) (s) provides, in relevant part, that "[c]ompensation for permanent partial loss or loss of use of an eye shall be awarded on the basis of uncorrected loss of vision or corrected loss of vision resulting from an injury whichever is the greater." The parties do not dispute that claimant's injury necessitated the removal of the lens and that, without the subsequent implant surgery, claimant would have sustained a marked loss of vision; indeed, the Board concluded that claimant had suffered a 100% postaccident loss of vision in his right eye prior to surgery. Following such surgery, however, and according to the carrier's consultant, claimant's vision in his right eye was restored to 20/20. Claimant, contending that the lens implant is a corrective device much like eyeglasses or contact lenses, argues that he is entitled to an award under Workers' Compensation Law § 15 (3) (s). The employer and the carrier assert, and the Board found, that the term "corrected" was intended to be limited to a loss of vision that is remedied by eyeglasses or contact lenses, not surgical implants.

The statute on its face offers no guidance as to what is meant by the terms "uncorrected" or "corrected" loss of vision and, hence, resort to the legislative history is appropriate. Prior to 1983, a claimant whose postaccident sight could be corrected through the use of eyeglasses or contact lenses could make no claim under Workers' Compensation Law § 15 (3) (*see Matter of Franzese v Jellgren Constr. Co.*, 29 AD2d 1037, *lv denied* 22 NY2d 644). In 1983, however, the statute was amended to establish "uncorrected loss of vision" as the standard for measuring compensable vision loss (*see* L 1983, ch 962). The Bill Jacket accompanying this amendment reveals that its legislative purpose was to extend to an injured worker the right to receive a schedule loss of use award based upon an actual visual impairment resulting from a workplace accident regardless of whether his or her vision subsequently was restored to 20/20 by the use of eyeglasses or contact lenses (*see* Bill Jacket, L 1983, ch 962). The current version of Workers' Compensation Law § 15 (3) (s) is the product of a 1988 amendment designed to address a gap in coverage for any claimant who, as a result of a work-related accident, sustains a loss to his or her corrected vision but not to his or her uncorrected vision (*see* Bill Jacket, L 1988, ch 204). By providing an alternate means of measuring compensable vision loss, a claimant could seek benefits based upon either a loss of corrected vision or a loss of uncorrected vision (*see id.*).

In denying claimant a schedule loss of use award, the Board essentially determined, based upon the references to eyeglasses and contact lenses contained in the cited legislative history, that the Legislature did not intend surgical implants to fall within the ambit of corrective devices. Thus, because claimant's sight was not "corrected" by the implant and his postaccident sight was restored to 20/20, he did not sustain a loss to either his uncorrected or corrected vision and, hence, is not entitled to a schedule loss of use award. As the Board's interpretation of the statute is rational in light of the underlying legislative history, we decline to disturb its decision denying claimant an award. Should the Legislature deem the Board's analysis of Workers' Compensation Law § 15 (3) (s) to be deficient, it is of course free to amend the statute.

PETERS, CARPINELLO, ROSE and KANE, JJ., concur.

Ordered that the decision is affirmed, without costs.